IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

**STATEWIDE ORGANIZING**
**FOR COMMUNITY EMPOWERMENT**
**and, SIERRA CLUB**

               **Plaintiffs,**

               v.                    **CIVIL ACTION NO:**

**S&H MINING, INC.**

               **Defendant.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

Plaintiffs file this Complaint and allege as follows:

### INTRODUCTION

**1.** This is a citizen suit alleging violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "CWA"), and the Tennessee Water Quality Control Act, Tenn. Code. § 69-3-101 et seq. ("TWQCA"). This citizen suit is brought under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, against Defendant S&H Mining, Inc. ("S&H Mining"), arising from violations of the effluent limitations and conditions set forth in Tennessee/ National Pollutant Discharge Elimination System ("TN/NPDES") permit TN0072168 issued to S&H Mining for Deep Mine 11 under Section 402 of the Clean Water Act, 33 U.S.C. § 1342. This action seeks a declaratory judgment and mandatory injunctive relief, civil penalties, and costs of litigation against S&H Mining.

**2.** As described below, Plaintiffs allege that S&H Mining discharged and continues to discharge pollutants—including iron, manganese, and total suspended solids (**"TSS"**)—into waters of the United States and of Tennessee, in consistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and the conditions and limitations of TN/NPDES Permit TN0072168 issued to S&H Mining by the State of Tennessee pursuant to Section 402 of the Clean Water Act.

**3.** This action also arises under 30 U.S.C. § 1270 (a)(1) for violations of the Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. § 1201 et seq., and S&H Mining's SMCRA Permit 3046. S&H Mining violated performance standards promulgated pursuant to SMCRA and incorporated into its permit by discharging pollutants in excess of applicable water quality laws and regulations and by failing to minimize disturbance to the hydrologic balance within the permit area to prevent material damage to the hydrologic balance outside of the permit area.

## JURISDICTION

4. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 33 U.S.C. § 1365 (CWA citizen's suit provision) and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

5. On March 19, 2014, Plaintiffs gave notice of the violations and their intent to file suit to S&H Mining, the United States Environmental Protection Agency ("EPA"), the Tennessee Department of Environment and Conservation ("TDEC") the Office of Surface Mining Reclamation and Enforcement ("OSMRE") and Department of the Interior offi-

cials as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270 (b)(1)(A).

6. More than sixty days have passed since the notice was served and neither EPA nor TDEC, nor OSM has commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, no regulator has commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g) or comparable state law, to redress the violations that occurred prior to issuance of the March 19, 2014 Notice Letter.

7. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act and SMCRA violations are located in this district.

## PARTIES

8. S&H Mining is a Tennessee Corporation with a principal business office in Wise County, Virginia. S&H Mining conducts business in Campbell County, Tennessee.

9. At all relevant times, S&H Mining has held both a SMCRA permit and TN/NPDES permit for, and has owned and operated, Deep Mine No. 11—a coal mining operation in Campbell County, Tennessee.

10. Plaintiff Statewide Organizing for Community eMpowerment ("SOCM") is a thirty-six year-old grassroots citizens' organization with more than two thousand members in Tennessee working for environmental, social and economic justice. SOCM grew out of the coalfields of East Tennessee and is dedicated to giving its members a voice in the quality of life in their communities.

11. Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and more than 6500 members

who reside in Tennessee and belong to its Tennessee Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in Tennessee.

12.     Plaintiffs' members, including without limitation Gary Ward (hereinafter collectively "Plaintiffs' members") suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharges of pollutants. Plaintiffs' members enjoy hiking, bird watching, fishing, swimming, ATV use, wildlife viewing and other activities in and around the areas impacted by Defendant's discharges, including Stoney Fork, Beech Fork and the New River. Plaintiffs members area aware of the damage to wildlife that can occur as the result of Defendant's discharges, and are concerned that the excessive and unlawful discharges of pollutants from Deep Mine 11 will have a negative impact on their wildlife viewing and fishing experiences in the New River watershed. Plaintiffs' members are further concerned about the impact that Defendant's discharges will have upon the New River and property values for homes near the river.

13.     If Defendant's unlawful discharges ceased, the harm to the interests of Plaintiffs' members would be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members injuries by preventing and/or deterring future unlawful discharges of pollutants.

14. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5) and SMCRA 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

15 The CWA is intended to protect the waters of the United States, including headwater streams. The primary objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

16. One of the six national goals to achieve this objective is the attainment of "water quality which provides for the protection and propagation of fish, shellfish, wildlife and for recreation in and on the water." 33 U.S.C. § 1251(a)(2).

17. In furtherance of that goal, section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with a permit, such as a NPDES Permit issued by the EPA or an authorized state pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

18. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of a pollutant directly into the waters of the United States upon the condition that such discharge will meet all applicable requirements of the CWA and other such conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

19. Effluent limitations, as defined under Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges. Effluent limitations are among the conditions

and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

20. At all times relevant to this complaint, TDEC has been authorized by EPA to administer a NPDES program for regulating the discharge of pollutants into waters of the United States and of Tennessee. Permits issued under this program are known as "TN/NPDES" permits.

21. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to commence a civil action on his own behalf. . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation."

22. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA, a WQBEL, and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

23. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under section 309(d) of the CWA, 33 U.S.C. § 1365(d).

24. Section 309(d) of the CWA, 33 US.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 US.C. § 1311, or "any permit condition or limitation" implementing Section 301 of the CWA in a permit issued under Section 402 of the CWA, shall be subject to civil penalties up to $25,000 per day.

25. Pursuant the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the court may assess a civil penalty of up to $37,500 per day for each violation. 40 C.F.R. § 19.4

26. Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

27. SMCRA is designed to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a).

28. Section 101(c) of SMCRA, 30 U.S.C. § 1201(c) contains Congress's findings as to the burdens and adverse effects of surface mining on interstate commerce and the public welfare, including "destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural and forestry purposes. . . by polluting the water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property, by degrading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water, and other natural resources." Id.

29. Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the OSMRE or from an approved state regulatory authority.

30. At all relevant times, the program in Tennessee has been administered by OSMRE and permits are issued directly by the federal agency. *See* 30 C.F.R. Part 942.

7

31. Section 515 of SMCRA, 30 U.S.C. § 1265, contains performance standards governing the operations of surface coal mining operations. Pursuant to the definitions section of SMCRA, 30 U.S.C. § 1291, the term "surface coal mining operation" encompasses surface impacts of an underground coal mine.

32. Surface impacts of underground mining activities in Tennessee are governed by the permanent program performances standards contained within 30 C.F.R Part 817. 30 C.F.R. § 942.817(a).

33. Among the performance standards mandated by SMCRA is that mining activities must be conducted in such as manner as to "minimize disturbance of the hydrologic balance within the permit and adjacent areas, to prevent material damage to the hydrologic balance outside the permit area." 30 C.F.R. § 817.41, see also, 30 U.S.C. § 1265(b)(10).

34. Another performance standard mandated by SMCRA is that, "discharges of water from areas disturbed by underground mining activities shall be made in compliance with all applicable State and Federal water quality laws and regulations and with the effluent limitations for coal mining promulgated by the U.S. Environmental Protection Agency set forth in 40 C.F.R. part 434." 30 C.F.R. § 817.42.

35. SMCRA permits issued in Tennessee incorporate these performance standards. See 30 U.S.C. § 1265.

36. Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely affected to bring an action in federal court to compel compliance with SMCRA against any "person alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

37. Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

**FACTS**

38. At all relevant times, S&H Mining has held TN/NPDES permit TN0072168 to regulate water pollution from its Deep Mine 11.

39. At all relevant times, S&H Mining has held SMCRA permit 3046 for its Deep Mine 11.

40. TN/NPDES permit TN0072168 places limits on discharges from Outlets 001 and 002 into Stoney Fork and Beech Fork of the New River in Campbell County, Tennessee.

41. Stoney Fork, Beech Fork, and the New River are all waters of the United States and state waters of Tennessee.

42. TDEC has classified each of the above-referenced waters as supportive of uses for fish and aquatic life, livestock watering and wildlife, recreation and irrigation.

43. The Discharge Monitoring Reports ("DMRs") that S&H Mining submitted to TDEC reveal that S&H Mining has discharged pollutants, including iron, manganese, and TSS, in excess of the final limitations of its permit from both Outlet 001 and Outlet 002.

44. As outlined in Table 1 in the notice S&H violated the effluent limitations on the above-referenced outlets of TN/NPDES Permit TN0072168 at least 80 times for a cumulative total of 1,286 violations.

45. On the basis of S&H Mining's pattern of exceedances of its effluent limitations in TN/NPDES Permit TN0072168 and the absence of any meaningful efforts by S&H Mining to

eradicate the cause of the violations, Plaintiffs allege that S&H Mining is in continuing and/or intermittent violation of the Clean Water Act.

46. As a result of the violations of its TN/NPDES Permit, S&H Mining has simultaneously violated the conditions of SMCRA and its SMCRA Permit 3046.

47. Plaintiffs sent a letter on March 19, 2014, putting S&H Mining on notice of these violations and indicating Plaintiffs' intent to sue.

### FIRST CLAIM FOR RELIEF
(Clean Water Act Discharge Violations of TN/NPDES Permit TN0072168)

48. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 47 supra.

49. S&H Mining's discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the CWA, 33 U.S.C. § 1311.

50. The pollution limits within TN/NPDES Permit TN0072168 are "effluent standards or limitations" for purposes of section 505(a)(1) of the Clean Water Act because they are conditions of a permit issued under section 402 of the Act. 33 U.S.C. § 1365(f).

51. Each and every discharge in excess of the effluent limitations in NPDES Permit TN0072168 is actionable under section 505(a)(1) of the CWA. 33 U.S.C. § 1365(a)(1).

52. A violation of an average monthly effluent limitation in a permit is considered to be a violation for each and every day of that month.

53. S&H Mining has violated the effluent limitations in NPDES Permit TN0072168 at least 80 times for a cumulative total of at least 1,286 violations prior to the filing of this complaint.

54. Unless enjoined, S&H Mining will remain in continuing violation of the Clean Water Act.

55. Upon information and belief, Plaintiffs allege that S&H Mining is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in NPDES Permit Number TN0072168 because S&H Mining has not made meaningful efforts to eradicate the underlying cause of the violations.

56. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), S&H Mining is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in TN/NPDES Permit TN 0072168.

**SECOND CLAIM FOR RELIEF**
(Violations of SMCRA Performance Standards by Exceedance of Effluent Limitations)

57. Plaintiffs incorporate by reference all allegations contained in paragraphs 2 through 56 supra.

58. Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA.]"

59. As discussed above, federal regulations promulgated under SMCRA include performance standards that (1) prohibit mining operations that cause violations of effluent standards

and (2) prohibit operations from causing material damage to the hydrologic balance outside the permit area. 30 C.F.R. §§ 817.41; 817.42.

60. Pursuant to 30 C.F.R. § 942.817(a), all of the permanent program performance standards (unless specifically exempt or modified) are applicable in Tennessee.

61. TN/NPDES Permit TN0072168 regulates discharges from S&H Mining's Deep Mine 11.

62. As alleged above, S&H Mining has repeatedly violated the effluent limits in TN/NPDES Permit TN0072168.

63. Consequently, S&H Mining has violated the performances standards incorporated into the regulations under SMCRA. By violating effluent standards, S&H Mining has also failed to minimize disturbance to the hydrologic balance within the permit area to prevent material damage outside the permit area.

64. Because its SMCRA permit incorporates these performance standards, S&H Mining is also in violation of the terms and conditions of SMCRA Permit 3046.

65. Unless enjoined, S&H Mining will remain in ongoing and continuing violation of SMCRA.

## RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this Court enter an Order:

(1) Declaring that S&H Mining has violated and is in continuing violation of Sections 301 and 402 of the CWA, 33 U.S.C. § 1311 and 1342;

(2) Ordering S&H Mining to immediately comply with all effluent limitations and other terms and conditions of TN/NPDES Permit TN0072168;

(3) Declaring that S&H Mining is in violation of SMCRA, the performance standards under the statute and regulations, and Permit 3046; and Ordering S&H Mining to immediately comply with all SMCRA performance standards and the terms of Permit 3046;

(4) Ordering S&H Mining to pay appropriate civil penalties up to $37,500 per day for each violation of the CWA, pursuant to Sections 505(a) and 309(d) of the CWA, 33 U.S.C. §§ 1365(a) and 1319(d);

(5) Awarding Plaintiffs' their attorney and expert witness fees and all other costs of litigation, pursuant to Section 505(d) of the CWA, 33 U.S.C. § 1365(d) and Section 520(d) of SMCRA, 30 U.S.C. § 1270(d); and

(6) Granting other such relief as the Court deems just and proper.

Respectfully submitted,

 /s/Mary Eugenia Lewis_____
Mary Eugenia "Gena" Lewis
Law Office of Gena Lewis
P.O. Box 6004
Maryville, TN 37802
Office Phone: (865) 268-9911
Cell Phone: (865) 300-1495
Fax: (865) 978-6605
BPR No. 025020

Michael Bernard
Ogle, Elrod & Baril
706 Walnut St., Ste. 700
Knoxville, TN 37902\
Office Phone: (865) 546-1111

*Counsel for:*

Sierra Club
85 Second Street, 2d Floor
San Francisco, CA 94105-3441
415- 977-5680

Statewide Organizing for Community
   eMpowerment
2507 Mineral Springs Avenue Suite D
Knoxville, TN 37917
865-249-7488

## CERTIFICATE OF SERVICE

I, Michael Bernard, attorney for Plaintiffs, do hereby certify that service of the within and foregoing Complaint was made upon United States Environmental Protection Agency and the Attorney General by mail delivery to:

Gina McCarthy
Administrator
USEPA
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Mail Code: 1101A
Washington, DC 20460

Eric H. Holder
U.S. Attorney General
950 Pennsylvania Ave. N.W.
Washington, DC 20530-0001

by placing the same with proper postage affixed in the U.S. Mail on this the 19th day of May 2014.

/s/Michael Bernard
Michael Bernard, Attorney for Plaintiffs